CERA LLP
SOLOMON B. CERA (SBN 99467)
THOMAS C. BRIGHT (SBN 169713)
PAUL K. PFEILSCHIEFTER (SBN 301463)
201 California Street, Suite 1240
San Francisco, CA 94111
Telephone: (415) 777-2230
Email: scera@cerallp.com
Email: tbright@cerallp.com
Email: p.pfeilschiefter@cerallp.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DANNY CHAU; HONG ZHU; JAN SOMERS; JESSICA SETO; KENNETH HEYEN; KIERSTEN STANTON; LEAH SCHUNK; MAUREEN MCBIRNEY; MASAYA TAKAHASHI; SAUL TOOLEY; TALON JONES; TEENA KIRCHNER; and ZACHARY MONDO, On Behalf of Themselves and All Others Similarly Situated;<br><br>Plaintiffs,<br><br>v.<br><br>VOLTA, INC., a Delaware Corporation; VOLTA CHARGING INDUSTRIES, LLC, a Delaware Limited Liability Company,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **VIOLATION OF WARN ACT (29 U.S.C. §§ 2101** *et seq.***)**<br>2. **VIOLATION OF CALIFORNIA WARN ACT (CAL. LABOR CODE §§ 1400** *et seq.***)**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

## I. INTRODUCTION

1. Plaintiffs file this class action complaint against defendant Volta, Inc. and defendant Volta Charging Industries, LLC (collectively hereinafter "Volta") for violations and ongoing and anticipated further violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act"), as well as the California WARN Act, Cal. Lab. Code § 1400 *et seq.* (the "CA WARN Act").

2. Defendants have effectuated several layoffs and furloughs beginning in October 2022, including one furlough on October 21, 2022, which impacted approximately 110 employees and another furlough on October 31, 2022, which impacted approximately 30 more employees.

3. At no time did Volta provide 60 days of advance notice of the furloughs as required under both the WARN Act and the CA WARN Act.

4. Plaintiffs file this action seeking damages and to ensure compliance with the law requiring the requisite notice or severance payment in connection with the furloughs and that Defendants not solicit releases of claims of any employees without informing them of the pendency of this action and their right to pursue claims for violations of the WARN Act and CA WARN Act.

5. Plaintiffs seek monetary damages and immediate injunctive relief on behalf of themselves and all similarly situated employees, precluding Defendants from circumventing the requirements of the WARN Act and the CA WARN Act.

## II. PARTIES

### A. Plaintiffs

6. Plaintiff Danny Chau was employed at Volta as a Senior Manager of Logistics from January 2, 2022, furloughed on October 21, 2022, and is a resident of Millbrae, California.

7. Plaintiff Hong Zhu was employed at Volta as a Senior Software Engineer from March 5, 2019, furloughed on October 21, 2022, and is a resident of Vallejo, California.

8. Plaintiff Jan Somers was employed at Volta as an Engineering Project Manager from June 15, 2021, furloughed on October 31, 2022, and is a resident of Snoqualmie Ridge,

Washington.

9. Plaintiff Jessica Seto was employed at Volta as a Network Operations Deployment Coordinator from April 19, 2022, furloughed on October 31, 2022, and is a resident of Newark, California.

10. Plaintiff Kenneth Heyen was employed at Volta as a Senior Software Engineer from March 22, 2022, furloughed on October 21, 2022, and is a resident of Ridgefield, Washington.

11. Plaintiff Kiersten Stanton was employed at Volta as a Talent Acquisition Manager from June 6, 2021, furloughed on October 21, 2022, and is a resident of La Mesa, California.

12. Plaintiff Leah Schunk was employed at Volta as a Senior Insights Analyst from January 4, 2022, furloughed on October 21, 2022, and is a resident of San Francisco, California.

13. Plaintiff Maureen McBirney was employed at Volta as a Senior Product Manager from May 17, 2022, furloughed on October 21, 2022, and is a resident of Foster City, California.

14. Plaintiff Masaya Takahashi was employed at Volta as a QA Engineer from January 18, 2022, furloughed on October 21, 2022, and is a resident of San Francisco, California.

15. Plaintiff Saul Tooley was employed at Volta as a Software Development and Engineer Test Lead from October 5, 2021, furloughed on October 21, 2022, and is a resident of Chico, California.

16. Plaintiff Talon Jones was employed at Volta as a Senior Quality Engineer from January 18, 2022, furloughed on October 21, 2022, and is a resident of Foster City, California.

17. Plaintiff Teena Kirchner was employed at Volta as a VP IT/Business Systems from March 2020, furloughed on October 21, 2022, and is a resident of Novato, California.

18. Plaintiff Zachary Mondo was employed at Volta as an Applications Engineer from February 15, 2022, furloughed on October 21, 2022, and is a resident of San Francisco, California.

**B. Defendants**

19. Defendant Volta, Inc. is a Delaware Corporation, with its headquarters at 155 De Haro Street, San Francisco, CA 94103.

20. Defendant Volta Charging Industries, LLC, is a Delaware Limited Liability Corporation, with its headquarters at 155 De Haro Street, San Francisco, CA 94103. Volta Charging Industries, LLC, is a wholly owned subsidiary of Volta, Inc.[1]

### III. JURISDICTION AND VENUE

21. Jurisdiction is based on 28 U.S.C. §§ 1331, 1332; 29 U.S.C. §§ 2102, 2104(a)(5); and California Labor Code § 1404 of the Worker Adjustment and Retraining Notification Act.

22. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

23. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c), and 29 U.S.C. § 2104(a)(5) of the WARN Act because Defendants do business in this District, employed Plaintiffs and many other individuals in this District, and the acts underlying the WARN Act violations took place in this District.

### IV. FACTUAL ALLEGATIONS

24. The allegations herein are based on Plaintiffs' employment records, publicly filed documents, and publicly available news resources, as well as the investigation of counsel.

**A. Volta's Business**

25. Volta is in the business of building and installing charging stations for electric vehicles and placing those charging stations at locations throughout the United States where, once installed, they charge electric vehicles and generate advertising revenue through advertisements displayed on the charging apparatus.[2]

26. Volta's income derives primarily from advertising (80%), with "network development" (i.e., building charging stations) accounting for 17% of its revenue, and the remainder of its income through operations and intelligence (4%).[3]

---

[1] https://www.sec.gov/ix?doc=/Archives/edgar/data/1819584/000162828022009389/vlta-20211231.htm (last visited Nov. 4, 2022)

[2] Volta, Inc.'s SEC Form 10-K for year ending December 31, 2021. https://www.sec.gov/ix?doc=/Archives/edgar/data/1819584/000162828022009389/vlta-20211231.htm (last visited Nov. 4, 2022)

[3] Information as provided in Volta's 2021 10-K. https://www.sec.gov/Archives/edgar/data/1819584/000162828022009389/vlta-20211231.htm. (last visited Nov. 2, 2022)

27. According to Volta's 10-K for the fiscal year ending December 31, 2021, "Volta primarily owns, operates and maintains EV charging stations and has expanded its network across the United States to include 2,264 chargers across 23 states and territories that generated over 210,000 estimated charging sessions per month on average for year ended December 31, 2021, forming one of the most utilized charging networks in the United States on a station-by-station basis."[4] Volta charging stations are found both across the United States and internationally.[5]

### B. Although Workforce Reductions Were Foreseeable Long Before October 2022, Volta Employees Were Led to Believe Their Jobs Were Safe

28. Volta had ample reason to foresee the possibility of a furlough or other mass layoff long before it furloughed the Plaintiffs and Class members. For example, on March 2, 2022, Volta disclosed that its previously published third quarter 2021 financial results were inaccurate and that it expected to report a net loss of $69.7 million for the quarter. On March 3, 2022, Volt, Inc.'s share price fell $0.11, or 2.6%, to close at $4.01 per share.

29. On March 21, 2022, Volta announced that it would reschedule announcement of its fourth quarter and full year 2021 financial results. That same day, Volta's share price fell $0.38, or 8.4% to close at $4.12 per share.

30. On March 28, 2022, Volta CEO and founder Scott Mercer resigned, along with co-founder and president Chris Wendel.[6] That same day, Volta appointed independent directors and members of Volta's board, Vince Cubbage and Kathy Savitt, as board co-chairs. On April 15, 2022, Volta's Chief Revenue Officer Brandt Hastings was appointed as Volta's interim CEO.

31. Despite these economic warning signs and drastic changes in executive leadership, Volta nonetheless continued making optimistic representations regarding its financial health—but failed to issue any notice to its employees that their jobs were at risk. For example,

---

[4] https://www.sec.gov/ix?doc=/Archives/edgar/data/1819584/000162828022009389/vlta-20211231.htm (last visited Nov. 4, 2022)
[5] *Id.*
[6] https://www.nasdaq.com/articles/volta-ceo-scott-mercer-quits (last visited Nov. 16, 2022)

4
COMPLAINT

on May 13, 2022, Volta released its first quarter financial results, reporting revenue increases of "77% Year-Over-Year to $8.4 million." Volta also reported Media (Behavior and Commerce) Revenue Increased 73% Year-over-Year to $6.1 million."[7]

32. On June 13, 2022, Volta issued a press release announcing the appointment of Vince Cubbage, CEO and President of Tortoise Acquisition Corp. II., as Volta's interim Chief Executive Officer. In that press release Volta continued to make optimistic representations, e.g., "We believe these appointments help the Company progress as it builds a world-class executive team with a record of delivering results, public company expertise and a focus on key stakeholder value."[8]

33. Despite these further changes in its executive leadership and additional economic warnings, Volta continued making positive and optimistic representations regarding the health of its business. For example, on August 11, 2022, Volta issued a press release reporting its "second quarter revenue increased 83% Quarter-over-Quarter and 121% Year-over-Year to $15.3 million" and that "media revenue increased 83% Quarter-over-Quarter and 73% Year-over-Year to $11.2 million" among other representations.

**C. Volta Suddenly Furloughed a Large Number of Employees Without Notice**

34. Notwithstanding its myriad optimistic representations, on September 28, 2022, Volta issued a press release announcing an "organizational realignment to reduce costs and drive strategic priorities." In that press release, Volta reported the "realignment" "represents a 10% reduction in current full-time employees. As of today, Volta has reduced approximately 18% of its full-time employees through other workforce reductions and organic attrition since June 1, 2022." Volta further announced it was "revising [downward] its Q3 revenue guidance to between $13.5 million and $14.5 million. Furthermore, the company is withdrawing its full year 2022 revenue and install guidance until further notice."[9] Thus, it is indisputable that Volta's decision

---

[7] https://investors.voltacharging.com/news/news-details/2022/Volta-Inc.-Reports-First-Quarter-Financial-Results/default.aspx (last visited Nov. 5, 2022)
[8] https://investors.voltacharging.com/news/news-details/2022/Volta-Inc.-Board-of-Directors-Announces-Executive-Leadership-Team-Additions-and-Key-Promotions/default.aspx. (last visited Nov. 5, 2022)
[9] https://investors.voltacharging.com/news/news-details/2022/Volta-Realigns-Organization-to-Reduce-Costs-and-

to furlough employees was foreseeable at least as of September 28, 2022, notwithstanding Volta's continuing optimistic representations regarding its financial health.

35. On October 21, 2022, Volta issued a press release providing updated information pertaining to its "Business Realignment," wherein it reported that it had "decreased 54% of U.S. full-time employees through this and other workforce reductions that began in Q2 2022."[10] That same day, Volta furloughed approximately 110 employees without any prior notice. Volta repeated its unlawful conduct on October 31, 2022, furloughing approximately 30 additional employees, again without any prior notice.

36. Despite these admitted and likely long anticipated workforce reductions, Volta failed to provide notice to its employees that complies with the federal and state WARN Act requirements, including by failing to report to the California Employment Development Department as required by California Labor Code § 1401(a)(2).

### V.  CLASS ACTION ALLEGATIONS

37. Plaintiffs bring this action as a class action under Rule 23(a), Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, as well as 29 U.S.C. § 2104(a)(5) and California Labor Code § 1404, each of which permit recovery by individuals on behalf of others who are similarly situated. The proposed class ("Class") is defined as follows:

> All current and/or prior employees of Defendants who were furloughed or laid off from October 1, 2022, or after including those employees who were furloughed as of October 21, 2022, and October 31, 2022.

38. **Common Facts**. The following facts are common to the members of the Class, making this action optimal for class resolution:

39. Plaintiffs and Class members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act, 29 U.S.C. § 2101(a)(5) and (6).

---

Drive-Strategic-Priorities/default.aspx. (last visited Nov. 5, 2022) Volta previously anticipated third quarter revenue "in the range of 17 million to 18 million." *See* https://investors.voltacharging.com/news/news-details/2022/Volta-Inc.-Reports-Second-Quarter-Financial-Results/default.aspx (last visited Nov. 5, 2022)

[10] https://investors.voltacharging.com/news/news-details/2022/Volta-Provides-Update-on-Business-Realignment/default.aspx (last visited Nov. 10, 2022)

40. Plaintiffs and Class members were subjected to a "mass layoff" as defined in the WARN Act, 29 U.S.C. §§ 2101(a)(2) and 2101 (a)(3).

41. Plaintiffs and Class members were subjected to a "layoff" as defined in the California Labor Code § 1400(c) and a "mass layoff" as defined at California Labor Code § 1400(d) because the furloughs involved more than fifty employees in a thirty-day period.

42. Plaintiffs and the Class members are "employees" at a "covered establishment" subject to a "mass layoff" and/or "termination" as those terms are defined in the CA WARN Act, California Labor Code § 1400.

43. **Numerosity**. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown at this time, Plaintiffs are informed and believe that approximately one hundred and seventy employees were impacted by Defendants' conduct as alleged herein.[11]

44. **Typicality**. Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs and the members of the Class were subject to the same or similar practices arising out of Defendants' common course of conduct in violation of the federal and state laws as alleged herein. Plaintiffs and the Class have sustained similar types of damages because of these common practices.

45. **Adequacy**. Plaintiffs will fairly and adequately protect the interests of the Class because they possess the same interests and suffered the same general injuries as all other Class members. Plaintiffs have retained counsel competent and experienced in class action litigation including wage and hour class action litigation.

46. **Commonality**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Questions of law and fact common to the Class include but are not limited to:

   a. Whether Defendants failed to provide adequate notice to furloughed or laid off employees as required by the Federal WARN Act and the CA WARN Act;

---

[11] Volta reports it has reduced its full time workforce by 54%. See https://investors.voltacharging.com/news/news-details/2022/Volta-Inc.-Reports-Third-Quarter-Financial-Results/default.aspx (last visited Nov. 16, 2022)

      b.   Whether Defendants complied with the California Labor Code;

      c.   Whether any exemptions or exceptions apply that will excuse Defendants failure to provide notice under the Federal WARN Act or the CA WARN Act; and

      d.   Whether Defendants have acted or refused to act on grounds generally applicable to the members of the Class, thereby making final injunctive or declaratory relief appropriate with respect to the Class as a whole.

47.   **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens on the courts and the parties and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, will achieve substantial economies of time, effort, and expense, and will assure uniformity of decision as to persons similarly situated, without sacrificing procedural fairness.

48.   The interests of members of the Class in individually controlling the prosecution of separate actions is highly limited and impractical. The Class has a high degree of cohesion warranting prosecution of the action through representatives. The amounts at stake for Class members, while substantial in the aggregate, are comparatively small on an individual basis. As individuals, the Class members lack the resources necessary to vigorously litigate against the ample and powerful resources of the Defendants. Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

**VI.   COUNT ONE: VIOLATIONS OF THE FEDERAL WARN ACT**

**(29 U.S.C. § 2101 *et seq.*)**

**(Against All Defendants)**

49.   Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

50.   At all times material herein, Plaintiffs, and all similarly situated members of the Class, were entitled to the rights, protections, and benefits provided under the WARN Act, 29 U.S.C. § 2101, *et seq*.

51. The WARN Act regulates the amount of notice an employer must provide to employees who will be terminated due to the employer's closing of a plant or mass layoffs, as well as the back pay and other associated benefits an affected employee is due based on a violation of the required notice period.

52. Defendants were, and are, subject to the notice and back pay requirements of the WARN Act because they are individually and collectively a business enterprise that employs 100 or more employees, excluding part-time employees, as defined in the Act. 29 US.C. § 2101(1)(A).

53. Defendants violated the WARN Act by ordering a mass layoff of employees on or before October 31, 2022, without providing notice required under the WARN Act.

54. None of the exemptions provided by the WARN Act apply to Defendants. Accordingly, Plaintiffs and Class members are entitled to receive the notice and back pay required by the WARN Act (29 U.S.C. §§ 2102 and 2104).

55. Plaintiffs and all similarly situated employees have been damaged by Defendants' conduct constituting violations of the WARN Act and are entitled to damages, including back pay and associated benefits for each day of the violation because Defendants have not acted in good faith or with reasonable grounds to believe their acts and omissions were lawful.

### VII. COUNT TWO: VIOLATIONS OF THE CALIFORNIA WARN ACT
### (LABOR CODE § 1400 *et seq.*)
### (Against All Defendants)

56. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

57. At all times material herein, Plaintiffs and all members of the Class, have been entitled to the rights, protections, and benefits provided under the CA WARN Act, California Labor Code § 1400, *et seq*.

58. The CA WARN Act regulates the amount of notice an employer must provide to employees who will be terminated due to the employer's layoffs, as well as the back pay and other associated benefits an affected employee is due based on a violation of the required notice

period.

59. Defendants were, and are, subject to the notice and back pay requirements of the CA WARN Act because the facilities are covered establishments that employ 75 or more employees, excluding part-time employees, as defined by Cal. Labor Code § 1400.

60. Defendants violated the CA WARN Act by ordering a mass layoff of employees as set forth herein without providing the required notice.

61. None of the CA WARN Act exemptions apply to Defendants.

62. Accordingly, Plaintiffs and all similarly situated employees have been damaged by Defendants' conduct constituting violations of the CA WARN Act and are entitled to damages for their back pay and associated benefits for each day of the violation because Defendants have not acted in good faith nor with reasonable grounds to believe the acts and omissions described herein were not a violation of the CA WARN Act.

## VIII.   PRAYER FOR RELIEF

63. WHEREFORE, Plaintiffs, on their own behalf and on behalf of all other Class members, seek the following relief:

   a. entry of an order that this action may be maintained as a class action under Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure;

   b. entry of an order granting injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure;

   c. designation of the named Plaintiffs as the representatives of the Class and their counsel of record as Class Counsel;

   d. compensatory damages in an amount equal to at least the amounts provided by the WARN Act (29 U.S.C. § 2104(a)) and the CA WARN Act (Cal. Labor Code § 1402(a));

   e. penalties in the maximum amount permitted under the WARN Act (29 U.S.C. § 2104) and the CA WARN Act (Labor Code § 1403);

   f. reasonable attorneys' fees, costs and disbursements as allowed by the WARN Act (29 U.S.C. § 2104(1)(6)) and the CA WARN Act (Cal. Labor Code § 1404);

g. pre-judgment and post-judgment interest as permitted by law; and

h. such other relief as this Court shall deem just and proper.

### IX.   DEMAND FOR JURY TRIAL

64.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

Dated:  November 17, 2022

**CERA LLP**

By: */s/    Paul K. Pfeilschiefter*
    Paul K. Pfeilschiefter

*Attorneys for Plaintiffs and All Others Similarly Situated*